***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim L. Cramer and the briefs and arguments on appeal. Subsequent to the date of oral arguments, the Full Commission requested the re-submission of certain medical records which had been separated from the file. These records were received on 31 October 2000 and were also considered by the Full Commission in reviewing this matter. Based upon his assignments of error, plaintiff has failed to show good ground to receive further evidence or to modify the holding of the Deputy Commissioner. Accordingly, the Full Commission affirms the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing on 21 September 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. An employment relationship existed between the parties on 1 April 1998.
3. Plaintiffs average weekly wage may be determined from a Form 22.
4. The issue is whether plaintiff was injured due to an accident arising out of and in the course of his employment with defendant, and if so, what are the compensable consequences.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 1 April 1998, plaintiff was employed by defendant as a chicken catcher. In this job, plaintiff herded live poultry into coups. He worked from 8 p.m. until about 2 a.m and his usual partner was Mr. John Stackhouse.
2. On the evening shift of 31 March 1998 to 1 April 1998, plaintiff was working with a different employee, Mr. Michael Warren. Mr. Warren had been drinking and appeared to be intoxicated. Mr. Warren and plaintiff got into an argument, and Mr. Warren assaulted plaintiff by punching him in the face.
3. Other co-workers broke up the fight. Mr. Phillip Powers, a supervisor, was called to the scene and arrived just after 11 p.m. Mr. Powers spoke with plaintiff and noticed that plaintiffs left eye was swollen, but there were no other obvious injuries. Plaintiff did not complain of any other injuries to Mr. Powers. Plaintiff was very upset over the assault, but he stayed and finished working his shift.
4. After work, plaintiff went to the emergency room at Cape Fear Valley Medical Center. The medical records reflect injury to his left eye from the assault. Plaintiff complained of blurred vision. He was assessed with a contusion to his eye. Plaintiff was ambulatory and there is no mention of any limp or difficulty walking. There is no mention of any injury, other than his face and left eye. The medical history taken at that time mentions tendonitis.
5. Plaintiff returned to work within a couple of days and continued working his normal duties with defendant. Plaintiff testified that about two to three (2-3) weeks later he returned to the hospital with complaints about his right knee. However, no medical records of such a visit have been produced as evidence. The medical records in evidence show that plaintiffs next hospital visit after the April 1 ER visit was almost two months later.
6. On 26 May 1998, plaintiff returned to the emergency room complaining of right knee pain. He related that he "twisted knee yesterday such that it appears he sustained the knee injury the day before. The records again mention his history of tendonitis, but there is no mention of any recent hospital visit. The records do not contain any mention of the prior assault. Plaintiff did not complain of any ongoing pain for the two months since the assault.
7. Plaintiff first saw Dr. Kouba, an orthopaedic specialist, on 1 June 1998. Plaintiff told Dr. Kouba that he had been having significant right knee pain, but he did not know of any prior injury. At that visit, plaintiff did not mention the prior assault. Dr. Kouba ordered an MRI of the right knee, which was scheduled for 3 June 1998.
8. On 17 June 1998, Dr. Kouba examined plaintiff again and reviewed the MRI results, which indicated a medial tibial plateau fracture. Dr. Kouba questioned plaintiff further about his history and plaintiff mentioned the assault of 31 March 1998. However, plaintiff also told Dr. Kouba that his knee did not start swelling until 18 May 1998. This is a different history from that given at the emergency room on 26 May 1998 when plaintiff said he twisted his knee the day before.
9. Although Dr. Kouba has given testimony which could relate plaintiffs knee injury to the assault, his opinion is based upon information which is not reliable. Plaintiffs reports of the onset of his knee pain are inconsistent at best. He made no complaints of knee injury at the time of the assault and no complaints of knee pain for almost two months after the assault. There is no indication that he had any swelling in his knee prior to the emergency room visit of 26 May 1998, when he said he had twisted his knee the day before.
10. Plaintiffs testimony that he was assaulted at work on 31 March 1998 is supported by other evidence of record, and in that regard is credible. However, his claim that he sustained injury to his knee at the time of the assault, for which he sought medical treatment within two to three weeks, is not found to be credible. This is particularly true where he made no such complaints to his supervisor or to the emergency room staff immediately following the assault, and there is no record of any knee complaint until 26 May 1998.
11. Since Dr. Koubas testimony is based, in part, upon an unreliable history from plaintiff, it does not support a finding of a causal connection between the assault and the right knee injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 31 March 1998, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant, when he was assaulted by a co-employee. As a result, he sustained injury to his face and left eye. G.S. 97-2(6).
2. Plaintiff has failed to prove that any injury to his right knee was caused by or related to the injury by accident of 31 March 1998. Id.
3. Defendant is responsible for payment of the bill for the emergency room visit on 1 April 1998 for treatment of Plaintiffs facial and eye injury sustained in the assault. G.S. 97-2(19); G.S. 97-25. Defendant is not responsible for payment of any medical bills for treatment of Plaintiffs right knee. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay the medical bills for plaintiffs visit to the emergency room of Cape Fear Valley Medical Center on 1 April 1998.
2. Plaintiffs claim for additional benefits related to his knee injury, must be and is hereby Denied.
3. Defendant shall pay the costs, including an expert witness fee of $350 for Dr. Stephen Kouba.
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/________________ RENE C. RIGGSBEE COMMISSIONER
S/_________________ LAURA K. MAVRETIC COMMISSIONER